Opinion of the court, by
Judge Hitchcock:
The court are called upon in this case to give a construction to the “Act for the relief of the poor,” passed February 10, 1816 (14 O. L. 197), and the act amendatory thereto, parsed February 12, 1829 (27 O. L. 50).
We can not expect to derive much assistance in the performance of this duty from the examination of English or ^American cases. The whole subject of supporting the poor, where it is done in pursuance of municipal law, depends upon statute regulation, and these statutes have been variant in' different countries. It is owing to this variance that different decisions, upon the same ■question, are made in different states.
In this state, it has ever been the policy that each incorporated township should support all paupers within their respective limits. *20 This does not seem to be controverted by the counsel for the plaintiff in error so far as it respects those who have obtained legal settlement; but it is denied that any duty is imposed to maintain those who are merely casual residents. The statutes in force at the time the liability of the plaintiff in error occurred, if there is-any liability, are those of February 10, 1816, and February 29, 1829, and it is by these statutes the case must be governed. Section 1 of the act of 1816, enacts “that the overseers of the poor shall have the care and management of all paupers within the-limits of their respective townships.” Here is no restriction, no limitation. “All paupers,” within the limits of the township, are-to be under the care and management of the overseers of the poor. It may be proper here to remark, that the trustees of Cincinnati township are; by statute, authorized and required to discharge the duties of overseers of the poor.
Section 2 of the same statute enacts “ that upon complaint, being made to the overseers of the poor, that any inhabitant or inhabitants are in a suffering condition,” etc. Every person residing in a township is an inhabitant, although such person may not have gained a legal settlement.
It would seem to the court, that a fair construction of these two sections of the statute would lead to the conclusion that the obligation was imposed upon the township to maintain or support, not only such paupers as have gained a legal settlement therein, but also such as were casual residents and who might need assistance. But, if there could be any doubt upon these two sections, that doubt must be removed upon the examination of. the fifth.
This section provides, “that where any person or persons *shall become chargeable in any township in which he, she, or they have not gained a legal settlement, it shall be the duty of the overseers of tire poor of such township, to cause such person or persons, so soon as the state of his, her, or their health will permit, to be removed to the township where he, she, or they were legally settled,” provided such person or persons have any legal settlement in this state; and if they have no legal settlement in this state, then the overseers of the poor are authorized, under the direction of the trustees of the township, to remove them to the state where they have a legal settlement, unless security is given to indemnify the township. By the same section, an action of debt is given against the township to which such pauper is re *21 moved, in favor of the one from which the removal takes place, to recover not only the expenses of removal, but such other expenses as may have been necessarily incurred. A person can not properly be said to “ become chargeable,” unless there is an obligation resting to incur charges.
It is urged, however, that the statute of 1829 is to be taken in connection with that of 1816; and that, under this statute,'the legislative intention is manifest, that support shall be extended to casual paupers only in those counties where there is a county poor house. We come to a different conclusion upon an examination -of this statute. The legislature, it is true, in section 3, provide that where there is such poor-house, paupers of this description shall be taken to it and there taken care of. It would be a strange inference to draw, that because this provision was made, such pauper .should be left, in those counties where there was no poor-house, to subsist upon the cold hand of charity or to suffer and perish.
The next question to be examined is, whether an individual who has furnished necessaries to a pauper can maintain an action against the township. The solution of this question must depend upon the nature of the obligation which rests upon a township to support its poor. If it be merely in the nature of a moral obligation, then no action can be maintained unless there has been a previous request or an express promise on the part of the township. But if, on the other hand, it be an absolute legal obligation, then the law ^implies a promise and an action can be sustained. We are of the opinion that it is of this latter description. The supreme power of the state, by legislative enactment, has imposed the obligation. It is of as much binding force as the obligation of a parent to support his child or a husband his wife. We do not say that in every case, where an individual furnishes necessaries to a pauper, he can maintain an action against the township. Complaint must, in the first instance, be made to the overseers of the poor. If these neglect their duty, or if the trustees of. the .township refuse to make the necessary order, it is right and proper for an individual to furnish a distressed pauper with the necessary relief, and justice, sound policy, and law require that the individual performing this benevolent act should be remunerated.
On the part of the plaintiffs in error, it is urged that it is discretionary with the trustees to make or refuse an order for the .support of a pauper; and that if these officers, in the exercise of that *22 discretion, refuse, the township can not be subjected to an action, although by possibility the officers, in their individual capacity, might be liable for nonfeasance or misfeasance. It is true that a discretion is vested in the trustees, but it must be exercised in such a manner as to carry into effect the object of the law. They are-the agents of the township. The township, not the individual trustees, is the responsible body, and the township can not excuse' itself by saying that its agents have been guilty of official misconduct.
It is further intimated that these officers should be proceeded! against by mandamus; and such, in "certain cases, seems to be th© mode of proceeding in New York. But if the object was to compel the trustees to make the necessary order, this would be but a poor remedy, especially where the pauper was suffering under' the ravages of a dangerous and loathsome disease. Before it could be applied the township would, in all probability, be relieved from expense by the death of the miserable being.
In the case before the court, it appears that Martha Good, the-individual relieved, was residing in Cincinnati. She was taken sick in- the house of Ogdon with the small-pox. She was clearly a pauper, and needed assistance. Ogden complained *to the trustees, and demanded of them to take the charge of her. This they refused. He was compelled either to let her suffer or perish in his own house, or to furnish the necessary aid. He pursued the latter course, and we can not doubt his right to receive a compensation. The charge of the court of common pleas was to this-effect, and is in accordance with our opinion of the law. The' judgment of that court must be affirmed.