Speak, J.
The principal question argued is as to th'e errors alleged in the charge of the court, and in the refusals to charge. We are of opinion that, if the action was maintainable at all, there was no error on the part of the court in those respects. But was the action maintainable?
The plaintiffs asked to recover for services rendered an alleged pauper. Whatever moral duty rests upon the well-to-do to aid those less fortunate, in their distress, there is, aside from the obligations attaching to husband, parent, and guardian, no legal obligation to perform that moral duty, nor to recompense another who may voluntarily render the needed service, nor is there, at common law, any such legal duty imposed upon the community. Clearly, then, the plaintiffs could not recover unless, by statutory authority, a right of action is given. We look, therefore, to the statutes relating to the relief of the poor to determine whether or not, under the allegations of the petition, the action was maintainable.
The general duty of the township to afford relief, is fixed by section 1491, of the Revised Statutes, which reads as follows: “The trustees of each township in the state shall afford, at the expense of their township, public support or relief to all persons therein, who may be in condition requiring the same, subject to the conditions, provisions, and limitations herein.”
*579 Liability for relief voluntarily furnished to paupers was first recognized by statute in the act of May 1, 1865, the fourth section of which provided that “ whenever any person in any township shall be in a condition requiring public relief, complaint thereof shall be forthwith made to the township trustees by some person having knowledge of the fact; and thereupon the township shall be liable for all relief which shall thereafter be afforded to such person; but if such complaint be not made to the township trustees within such time as the same might with reasonable diligence have been done, then said township shall be liable for such relief only as may be furnished after complaint made.” It will be observed that the limit of liability by this statute, in any case where the township was liable at all, was the value of the relief afforded, to be determined, where the claim was disputed, by suit upon the account as for quantum meruit.
Although many changes were made in this statute by amendment, the section quoted was not altered until the statute of April 12, 1876, when, for the first time, the services of physicians and surgeons were in terms included in the statute. The clause as to making complaint was also made more definite by a provision that, if it be not made within three days after the services rendered, or relief given, the township would be liable for that only which might be rendered after complaint made. The limit of liability, however, still remained the value of the service or relief afforded, to be determined as before. And this continued until the adoption of the amendment of February 27, 1878. That amendment imposes the conditions and limitations applicable to services rendered by physicians and surgeons, and is as follows : “ When a person in a township is in condition requiring public relief, or the services of a physician or surgeon, complaint thereof shall be forthwith made to the township trustees, by some person having knowledge of the fact; if medical service is required, the physician or surgeon called or attending shall immediately notify the trustees, or one of them, in writing, that he is attending a pauper, and thereupon the township shall be liable for all relief and for *580 services rendered, which may thereafter be a’fforded to such person, only in such amount as the trustees determine to be just and reasonable ; but if such notice be not given within three days after such relief is afforded, or service begins, then said township shall be liable for such relief or service only, as may be rendered after notice has been given, but the trustees, or one of them, may at any time order the discontinuance of such service or relief, and they shall not be liable for any services or relief thereafter rendered.”
A discretion is here given the trustees. To what does it apply, and what is its extent? As a general rule, discretion entrusted to officers of the law is not reviewable, but this might not obtain under the poor laws where the language of the statute did not clearly import a purpose to make it so. Hence it was held by this court in Trustees v. Ogden, 5 Ohio 23, that under a statute (act of February 12, 1829), which provided that where the township trustees should receive notice from the overseers of the poor that any person, not having a legal settlement in the township, was in condition requiring temporary assistance, they (the trustees) should, if in their opinion such person was in suffering condition, and requiring assistance from the township, direct the overseers to provide such relief. The opinion of the trustees was not final, and any individual who, after notice to the overseers, should furnish necessary relief to such person, could have an action to recover the value of the same against the township. There was no direct provision in the statute authorizing payment of such claim, but the court held'that a promise might be implied. The decision turned upon the duty to carry into effect the object of the law, there being no language in the act clearly showing that the opinion of the trustees as to the necessity for public aid should be treated as conclusive.
It will be noted that two ideas specially were embodied in this last amendment, viz.: (1) Notice to be in writing, and (2) action by the trustees in determining what would be just and reasonable. Manifestly, in the judgment of the legislature, the liberal terms of the statute had produced ill *581 results. Greater care in the disposition of claims of persons affording service or relief was necessary. This purpose is plain, but the language used to express it is involved in some obscurity. The extent of the change intended is not’ wholly free from uncertainty. The uncertainty relates to the words: “ In such amount only as the trustees determine to be just and reasonable.” It may be asked: Do these words apply exclusively to services rendered before notice without refererence to when notice is given, or only to such services when • notice is not given within three days, or to services rendered after notice is given, or to all services rendered, and is the determination of the trustees, whatever it may be, a finality ?
A construction has been claimed for this clause which confines its application to the extent of relief and services, and not to their price or value. In support of this construction it is suggested that the comma after the word “ person,” to be found in the statute, should be stricken out, and that being done, the language implies a limitation of the discretion of the trustees to the character and quantity of the services and relief. It seems to be conceded that the proposed construction is not admissible if the comma is retained. Now, in construing a statute punctuation may be changed or disregarded. It will not, ordinarily, control unless other” means fail. At the same time it is more or less to be relied upon in ascertaining the meaning intended. The presence of a comma, in one place or another, would not be allowed to subvert the obvious meaning of a sentence. On the other hand, it would not, without reason appearing for it, be disregarded. If that which appears to have been the general purpose of the legislature is as well effectuated by reading the statute exactly as it has been caused to be printed, as it would be by changing it, even as to punctuation, no adequate motive is present moving to the change. . The language used seems to forbid .this construction. The words do not fit the idea. “ In such amount ” are words ordinarily used in connection with a money liability; '■'■for such amount ” would be language naturally applicable to quantity or extent, of service. The clause, we think, cannot refer to the amount *582 or character of the remedies applied to the ailing pauper. If applied to that, then the language of the amendment is wholly useless, for the law, without the amendment, fully covers the purpose. It is the intent of the law, from beginning to end, to enjoin the full duty of affording relief upon the trustees. “The trustees shall afford,” says the law. How could this be carried out, if, in spite of the trustees, some one else may afford the relief, and in such amount and character as he may determine ? Exception is made only in cases where, by reason of a sudden necessity, the situation requires that the pauper be temporarily cared for by another. It applies, we are persuaded, to compensation to be awarded, and it restricts to the judgment of the trustees either that which is rendered and afforded before notice only, or that which is rendered after notice, or all services and relief afforded.
Another suggestion is that the time when the trustees must avail themselves of the right to determine either quantity of service or price, is when notice is served, because, by section 1495, it is made the duty of the trustees,’or one of them, to visit the person forthwith and ascertain his condition, etc. It is possible that an inference of this kind might be permissible if the duty enjoined were simply the one above indicated. But such is not the fact. The section provides that the trustees must ascertain, not only the condition of the pauper, but “ especially in what township and county in this state, if any, he or she is legally settled,” and 1496 directs immediate steps for the removal of paupers having settlement in some other county of the state. Besides, the same duty of visitation was enjoined by the statute before the amendment. We think, the language, taken altogether, fails to give color to the inference stated.
We are unable to perceive any valid reason for refusing to give effect to this statute as we find it. Without doubt the change in the law was intended to go farther than as affecting the matter of notice, or presentation of claims to the trustees. The formality of presentation was, in the ordinary course of business, the natural and proper thing to do under *583 the former statute, as indeed it was the usual thing. A discretion to some extent was, without question, intended to be lodged with the trustees.
It is clear that if notice is not given within three days, no pay can be allowed for any service before notice. So any such claim may be left out of the consideration. Leaving this class out, it is not easy to see any ground for discrimination as to claims for services or relief. It is not reasonable to discriminate against services rendered before notice (where notice is given at the proper time), because to do so would be to discourage specially sendees rendered to relieve immediate and pressing distress. Nor is it reasonable to discriminate against services rendered after notice, because, having notice, the trustees, if they see fit to do so, can take charge of the case and direct just what shall be done, and can make a special contract, thus determining in advance what is just and reasonable. The conclusion upon the reason of the statute, therefore, would seem to follow that the discretion by the trustees applies to all services rendered and all relief afforded for which the township is made liable. There may be doubt as to the true construction of this feature of the statute, but we are of opinion that, under it, when notice is immediately given, the township is liable for all relief and for services rendered, but if notice is not given within three days, the township is liable for only such relief and services as may be afforded after notice is given, and that in either case the township is liable only for such amount of money as the trustees determine to be just and reasonable. In the performance of the duty enjoined, the trustees must pass upon all claims for relief afforded or services rendered, coming within the terms of the law. Claims for services or relief prior to notice, where notice is not given within three days, they have no jurisdiction to consider, the provision of the statute in that respect being mandatory upon them, as it would have been upon a court had a like claim been prosecuted under the former statute. And, in general, it may be said that the limitations in this statute are directions to the tribunal trying the issue; if a court, as under the old statute, *584 then they control that tribunal; if the trustees, as under the present statute, then they control that body.
We reach this conclusion upon a consideration, not only of the apparent purpose of - the statute, but from the natural meaning -of the words used, taken in connection with the language of the statute as it stood before the last amendment. By the amendment the township is made liable.“ for all relief and for services rendered ” — terms applicable to the past— and for those “ which may or shall thereafter be afforded ” —terms applicable to the future, and the words following “ only in such amount as the said trustees may determine to be just and reasonable,” fix the tribunal which shall try the question of the value of the services or the relief. It would necessarily follow that the same tribunal must ascertain whether the person was, under the law, in condition requiring public relief, and whether the services charged were in fact rendered, in whole or in part, and whether they were of value.
In regard to the effect of the determination of the trustees, we think the language used leaves no serious question. The words of the additional clause as to liability are apt words to express a purpose to lodge with the trustees the discretion and power to determine finally the amount of compensation to be awarded to physicians and surgeons rendering services under the statute, and it is difficult to attach any meaning whatever to those words unless the plain ordinary signification is the true meaning. We conclude that the legislature meant, by the clause quoted, that which the words naturally import, and that the discretion conferred upon the trustees, when exercised, is to be held conclusive and final.
It is proper, in giving construction to a statute, to inquire into the cause and necessity of its enactment. When an amendment has been made, what was the mischief or defect for which the law, as it stood, had not provided ? And in giving construction to this amendment we are led to a consideration of the changes which have been, from year to year, taking place in the character of the people of the state. While formerly the paupers formed a small class, at the date *585 of this amendment that class had grown much out of proportion to the growth of population generally. Taxation for their support had noticeably increased and had become burdensome. Even to the remote rural hamlets many irresponsible, idle vagabonds had penetrated, while in the larger places and upon the lines of public travel, the tramp nuisance had become so intolerable as to call for severe penal laws looking to its suppression. In these circumstances, it was but natural that many' unworthy persons, a much larger number than in the past, would claim charity under our liberal laws for the relief of the poor, and bills for relief afforded would grow larger in number and amount, and greater vigilance might, in the judgment of the legislature, be required in order to protect the public treasury than was formerly necessary. If moved by these considerations it is not strange that that body should desire, as a step in that direction, to clothe the' trustees with the discretion theretofore exercised by courts and juries, upon the belief that its exercise by the township board would prove less burdensome to the community. Possibly this policy may seem illiberal, and not in accord with the humane and generous impulses of our people. But we are not called upon to vindicate the wisdom or humanity of the statute. Those are considerations to be addressed to the legislature.
The case of Commissioners v. Ranney, et al., 13 Ohio St. 388, is believed to be an authority in point. The action was to recover attorney’s fees and expenses in defending a person indicted for murder under an appointment by the court, by authority of the statute directing the mode of trial in criminal cases which required the court to assign counsel to defend indigent prisoners. A bill for services to the amount of $1,096.94 was presented to the county commissioners, who refused to allow the whole claim, but did allow the sum of $500. An appeal was taken to the court of common pleas. A practice had grown up under the statute for the court to allow and certify compensation for services thus rendered, and for the county auditor to pay the same as part of the ordinary expenses attending the administration of justice. *586 A later statute was passed making it unlawful to allow or to pay any such bill until it had been examined and allowed by the county commissioners and the amount certified by them. This court recognized the existence of the practice referred to, and was of opinion that the latter statute was enacted for the purpose of restraining the courts in the allowance of fees to counsel assigned to defend prisoners, and for the purpose of putting the county commissioners in the position before assumed by the courts of allowing such fees as might be deemed proper, and that from their allowance there was no appeal. It will be noted that the limitation imposed by this statute is less restrictive than the limitation in the statute we are considering, while the spirit of the two statutes authorizing the rendition of the service, is not dissimilar. Each is for the benefit of persons in need, and one no more than the other should receive a liberal construction. A proper defense of one’s legal rights, when in peril, is scarcely less a necessity than relief to his suffering body, nor is the legal aid afforded by the statute requiring the assignment of counsel to an indigent prisoner less a charity than the relief authorized by statute to one in physical distress.
A like construction was given to the statute of March 14, 1878, which authorized the appointment of counsel to assist the prosecuting attornej' in the trial of a pending case, and requires the county commissioners to pay “ such assistant such compensation for his services as the court approves and to their judgment seems just and proper,” (Sec. 7196, Revised Statutes), in Commissioners v. Osborn, 46 Ohio St. 271. It will be noted that the above statute was passed by the same legislature which passed the amendment of the poor laws, and but sixteen days after the enactment of that amendment.
But the construction of the clause of the statute under consideration is not a new question in this court. In Houston et al. v. Trustees of Urbana, disposed of at the January term, 1890, the defendants in error rendered medical services' to a pauper and presented a bill to the trustees. The board allowed a portion of the bill, making a tender of the amount, *587 and rejected the balance. Suit was then brought against the trustees for the whole amount, and a recovery had in the common pleas. This judgment was reversed by the circuit court and a judgment rendered in favor of the claimants for the amount of the allowance, and against them for all costs, which latter judgment was affirmed by this court. An instructive report of the case by Seney, J., will be found in 2 C. C. Reports, p. 14, and following.
We are unable to perceive any difference, in principle, between a case where the trustees reduce the amount of the claim made and a case where they refuse to make any allowance at all, provided they act upon it officially, and exercise the discretion vested by law, in good faith. If they will not act, the claimant is not without remedy. The trustees are officers constituting a board. The act in question especially enjoins upon the board, as a duty, the auditing of such claims. And, if they refuse to act, or assuming to act, through an arbitrary and unreasonable spirit, refuse to make any allowance, or make an allowance manifestly out of proportion to the value of the services rendered, showing bad faith amounting to a fraud upon the law, we see no reason why a proceeding in mandamus would not afford an adequate mode of redress. But so long as the board acts upon the case made in good faith, we are of opinion that its decision is a finality. The right of the claimant, in the first instance, is to have the board determine what is just and reasonable. When that is determined, the amount so ascertained constitutes the legal demand against the township. If nothing is found due, then no legal claim exists.
If this rule should work a hardship in any instance, it would not be upon the physicians. They know the law, and are presumed to act in view of its provisions. If, in some cases, it might apply harshly to the sufferer, relief must be had at the hands of the law-making power. It is our duty simply to declare the law as we find it.
The motion for a new trial should have been granted, and the verdict set aside as against the law of the case.
The judgment will be reversed, and the

Cause dismissed.